GENERAL SUPPLY & CONSTRUCTION CO. v. GOELET et al.

(Supreme Court, Appellate Division, First Department. February 9, 1912.)

1. CONTRACTS (§ 306*)—BUILDING—CONTRACTS—TERMINATION.

Under a building contract which permitted the owner to terminate the contract on the architect certifying that failure of the contractor to comply with the contract warranted termination, notice by the owner to the contractor of intention to take charge of the work was ineffectual, in the absence of such certificate.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 306.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CONTRACTS (§ 261*)—BUILDING—CONTRACTS—TERMINATION.

The owner under a building contract has a common-law right to cancel the contract after the contractor, without fault on the part of the owner, fails to perform within the time specified for performance, or within the time to which by mutual agreement performance has been extended, regardless of ineffectual efforts of the owner to terminate the contract pursuant to the provisions thereof.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 261.*]

3. CONTRACTS (§ 305*)—BUILDING CONTRACTS—BREACH—DAMAGES.

Where the time of performance has been waived and the contractor has been permitted to fully perform, the owner cannot interpose the failure of the contractor to perform within the time required as a defense to the action to recover the contract price of the work, but he may counterclaim his damages or sue therefor by an independent action.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1398, 1399, 1467–1475; Dec. Dig. § 305.*]

4. WORK AND LABOR (§ 27*)—BUILDING CONTRACTS—ACTION ON QUANTUM MERUIT—EVIDENCE.

In an action by a building contractor on a quantum meruit after the owner terminated the contract, the contractor acquiescing therein, the contract can be considered only to determine how long plaintiff was in default in completing the work.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 52; Dec. Dig. § 27.*]

5. WORK AND LABOR (§ 29*)—BUILDING CONTRACTS—ACTION BY CONTRACTOR.

In an action by a building contractor on a quantum meruit after the owner terminated the contract, the owner was entitled to offset the general damages he sustained by loss of use of the building between the time when the work should have been completed and the time when the owner took charge.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 56–58; Dec. Dig. § 29.*]

6. WORK AND LABOR (§ 29*)—BUILDING CONTRACTS—ACTION BY CONTRACTOR—ELEMENTS OF RECOVERY.

In an action by a building contractor on a quantum meruit after the owner terminated the contract, the contractor was not entitled to recover for material delivered on the premises by a subcontractor without showing that title thereto passed to the contractor.

[Ed. Note.—For other cases, see Work and Labor, Dec. Dig. § 29.*]

7. WORK AND LABOR (§ 29*)—BUILDING CONTRACTS.

In an action on a quantum meruit by a building contractor, expert witnesses testifying to the value of the work properly included the actual cost of labor and material and a reasonable profit.

[Ed. Note.—For other cases, see Work and Labor, Dec. Dig. § 29.*]

8. INTEREST (§ 19*)—RIGHT TO UNLIQUIDATED CLAIMS.

A building contractor's claim on a quantum meruit being unliquidated, he is not entitled to interest thereon.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 35–40; Dec. Dig. § 19.*]

Appeal from Judgment on Report of Referee.

Action by the General Supply & Construction Company against Robert Goelet and others. Judgment for plaintiff, and defendant Goelet appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Frederick Hulse, for appellant.

Benjamin G. Paskus (Louis S. Ehrich, Jr., on the brief), for respondent General Supply & Construction Co.

Frank Nevius (Arthur S. Van Buskirk, on the brief), for respondent Unit Concrete Steel Frame Co.

LAUGHLIN, J.   [1] On the 22d day of August, 1906, the plaintiff, a domestic corporation engaged in building construction, and the appellant, made a contract in writing, by which plaintiff undertook to erect on premises owned by appellant situate at the northeast corner of Sixty-Fourth street and Broadway, borough of Manhattan, New York, a six-story re-enforced concrete building in accordance with specifiations and drawings theretofore prepared by one F. M. Andrews, an architect, under whose direction the work was to be done.   The main floor of the building was to consist of stores, and the remainder of the building was to be used as a garage.   The contract provided that the building was to be completely finished and ready for occupancy on or before the 1st day of July, 1907, and, in default thereof, the respondent was to pay the appellant as liquidated damages the sum of $200 for each day thereafter until the building was completed and ready for occupancy.   The respondent failed to complete the building within the time specified in the contract, and, in fact, had not completed the excavation work at one corner of the plot at that time, although the excavation work had been finished and some of the concrete work done on other parts of the plot.   The contract contained the usual provision that should the contractor at any time refuse or neglect to supply a sufficient number of skilled workmen, or sufficient materials of proper quality, or fail in any other respect to prosecute the work promptly and diligently or to perform its agreement, the owner should be at liberty, on such neglect, refusal, or failure being certified by the architect, after three days' notice in writing to the contractor, to provide the necessary labor or materials at the expense of the contractor; and it was further provided that the owner should be at liberty to terminate the employment of the contractor and to take possession of the work for the purpose of completing it for the account of the contractor as therein provided, should the architect certify that such refusal, neglect, or failure on the part of the contractor constituted sufficient ground for such action.   On the 2d day of July, 1907, Maynicke & Franke, architects, representing the owner, wrote respondent a letter setting out the status of the work on the day before, which was the day on which the work should have been completed, and demanding that the contractor display greater energy to the extent of working nights, and drawing attention to the fact that the owner would suffer heavy financial loss on account of the delay, and that the contract spoke for itself on that point.   The contractor remained in charge of the work, making slow progress, however, without interruption until the 10th day of March, 1908, when Maynicke & Franke, in behalf of the owner, demanded of Andrews that he issue a certificate authorizing the owner to terminate the contract.   This was refused, but on the day following the archi-

tect issued a certificate authorizing the owner to supply certain broken stone and gravel with which to prosecute the work and to charge the same to the contractor. The next day, March 12, 1908, the appellant wrote respondent, complaining that the work had not been completed within the time specified by the contract, and that the contractor had not exercised proper diligence in prosecuting the work, and demanding that the respondent within three days supply a sufficient number of skilled workmen and sufficient material of proper quality to prosecute the work with promptness and diligence, and stating that, on its failure so to do, the appellant would furnish the labor and materials and terminate the respondent's employment, and enter upon the premises and take possession for the purpose of completing the work, and would take possession of the materials, tools, and appliances of the contractor thereon for that purpose. The appellant having failed to obtain the architect's certificate, this notice was ineffectual for the purpose of affording a basis to enable the appellant to take charge of the work under the contract, and complete it thereunder for the account of the respondent. On the 21st day of March thereafter, without further notice, the appellant forcibly ejected the respondent and took charge of the work, and on the same day the respondent wrote the appellant, protesting against his action, and claiming that it was not responsible for the delay, and stating that it would insist upon its rights under the contract. On the 3d day of April, thereafter, appellant wrote respondent another letter, in which he stated, in substance, that, pursuant to his previous letter, he had proceeded with the re-enforced concrete work which respondent had abandoned, that other work had since been done by respondent's subcontractors, who desired their pay, and complaining that respondent had not applied for an installment payment under the contract on March 25th, as provided in the contract, and had permitted liens to be filed, and giving notice that unless the respondent applied for the installment payment within three days which would enable appellant pursuant to authority contained in letters from the respondent under date of March 14 and 15, 1907, to pay the subcontractors and unless respondent took action to satisfy the liens and proceeded "in an orderly and diligent manner," appellant should consider that respondent had abandoned the entire work, and would complete the building and charge the expense to the respondent "as provided for in our contract." Respondent replied on the 8th of the same month, claiming that appellant had previously ejected it and taken possession of the entire work, and, in effect, that respondent would rest on appellant's prior breach of the contract. There was no further correspondence or negotiations between the parties. The respondent subsequently filed a mechanic's lien for the materials furnished and work performed less the amount received from the respondent on the theory that it was entitled to a lien to recover for the value of the materials furnished and work done as upon a quantum meruit, and it thereafter brought this action, and has recovered upon that theory.

The learned counsel for the appellant concedes that the contract was not lawfully terminated pursuant to its provisions entitling his

client to complete the work for the account of the contractor; and it could not be successfully contended that it was terminated under the contract. Counsel for both parties accept as applicable to this case the decision in Wyckoff v. Taylor, 13 App. Div. 240, 43 N. Y. Supp. 31, wherein it was held that, if a building contractor does not complete the work within the time specified, the owner may then, or at any time thereafter, exclude the contractor and take possession of the work, on the theory that there is a continuing breach on the part of the contractor who cannot then recover damages for being deprived of completing the work. In that case the contractor, after having been ejected from the work during its progress on account of not completing it within the time fixed by the contract, had recovered the contract price of the work as if he had fully performed, and the reversal was on that ground. The court, however, in the opinion discussed the contractor's effort to sustain the recovery on the theory that it was had on a quantum meruit, and, without expressing an opinion as to whether he could recover on a quantum meruit, held that the evidence in the record would not sustain a recovery on that theory. On the appeal herein, and evidently upon the trial, counsel for both parties considered the Wyckoff Case as authority for the right of the contractor to recover as on a quantum meruit when ejected from the work on account of his failure to perform within the agreed time; but it is not authority for that contention. In the view we take of the case, it is unnecessary to consider whether the broad rule stated in the Wyckoff Case that the owner may at any time after the date for completion eject the contractor as for a continuing breach of the contract, which does not appear to have been essential to an adjudication upon the facts then presented whereby it appeared that the contractor had been ejected about three weeks after the date set for completion had passed, is consistent with the decision made in Lawson v. Hogan, 93 N. Y. 39, in which it was held that, when the owner permits the contractor to remain in charge of the work after the date for completion, completion within the time specified is waived, and the contractor has a reasonable time thereafter within which to complete, and neither party can terminate the contract or put the other in default without giving notice requiring him to perform within a reasonable time, and that, in the absence of such notice, the contractor could not regard the contract as annulled and recover on a quantum meruit on account of delay by the owner, after the time for performance, which delayed the contractor, and other authorities to the same effect. Simmons v. Ocean Causeway, 21 App. Div. 30, 47 N. Y. Supp. 360; Taylor v. Goelet, 142 App. Div. 467, 126 N. Y. Supp. 1106.

[2] The rule is well settled that the owner has a common-law right to cancel the contract after the contractor, without fault on the part of the owner, fails to perform within the time specified for performance, or within the time to which by mutual agreement performance has been extended (Frenkel v. Friedmann, 199 N. Y. 351, 92 N. E. 666); but there appears to be no decision of the Court of Appeals deciding whether this is a continuing right at all times after the date for performance, as stated in the Wyckoff Case. Assuming that the

owner was at liberty to cancel the contract on the ground that the contractor in not having completed was guilty of a continuing breach of the contract, then the ineffectual efforts of the owner to terminate the contract pursuant to the provisions thereof would not affect his right to cancel it; but whether or not the owner had a right to cancel the contract is not very material in the case at bar, for he did, in effect, cancel it and the contractor has acquiesced in that action, and, as already observed, both parties agree that the contractor is entitled to recover for the value of the work done less any damages to which the appellant may be entitled.

[3] The rule is well settled that, where the time of performance has been waived and the contractor has been permitted to fully perform, the owner cannot interpose the failure of the contractor to perform within the time required as a defense to the action to recover the contract price of the work, but he may counterclaim his damages or sue therefor by an independent action. Deeves & Son v. Manhattan Life Ins. Co., 195 N. Y. 324, 88 N. E. 395; Reading Hdw. Co., v. City of New York, 129 App. Div. 292, 113 N. Y. Supp. 331; Raymore v. Pfotenshauer-Nesbit Co., 139 App. Div. 126, 123 N. Y. Supp. 875.

[4] The owner contends that he was entitled to recover the liquidated damages, and the learned counsel for the respondent at one stage of his argument, at least, accepts that theory for he contends that the owner was in part responsible for the delay, and that, therefore, the court will not apportion liquidated damages, which is the rule. Mosler Safe Co. v. Maiden Lane S. D. Co., 199 N. Y. 479, 93 N. E. 81. The court, however, in Mosler Safe Co. v. Maiden Lane S. D. Co., supra, held that where both parties are responsible for delay by which the time fixed for performance has passed, and the liquidated damage clause for that reason cannot be enforced, it is the duty of the contractor to complete within a reasonable time after crediting the owner's delay, and in his failure so to do the owner may recover his actual damage. In the case at bar, the owner acquiesced in the continuance of the work by the contractor after the time for completion by demanding, through his architect, a greater degree of energy and expedition, and he never gave the contractor notice to complete the work within a reasonable time, nor did he wait a reasonable time after a demand for completion. It is quite immaterial to a decision of the appeal whether the owner's right to damages is to be determined by the contract or depends upon the actual damage which he sustained by the failure of the contractor to perform within the time specified; for he showed that his actual damages were greater than his liquidated damages, and he has not been allowed to recover either. Since, however, there must be a new trial, it is advisable that we express our views on the question of damages. We are of opinion that since the owner in effect canceled the contract, whether rightly or wrongly, and the contractor acquiesced therein, the contract no longer governs, and is to be resorted to only to determine how long plaintiff was in default in completing the work. In that view, the owner's damages are limited to the period between the time when the contractor agreed to perform, and the time when

the owner prevented further performance. It is not contended on the part of the respondent that the owner was responsible for all of the delay, but it is contended that he was responsible for part of it. We are of opinion that this claim is not supported by the evidence. There is evidence tending to show that architects employed by appellant at the outset, and an architect subsequently employed by him did not approve certain plans and drawings, which, under the contract, were to be approved by the appellant promptly, and that the appellant failed to promptly indicate the style of columns he desired used in the construction of the building, and it appears by correspondence in the record that frequent complaint was made in behalf of the respondent with respect to these matters; but the statements in the correspondence are not proof of the facts, and there is no evidence that the respondent was at any time ready to proceed with work which it was unable to proceed with on account of any failure of the appellant in these respects or in any other respect.

[5] We are of opinion, therefore, that the appellant was entitled to offset against the respondent's claim the general damages which he sustained by the loss of the use of the building between the day when it was to be completed and the day appellant took charge of it in its uncompleted condition. This view necessarily requires a new trial; but in granting it it is proper to comment on some other claims with respect to the question of damage.

[6] The recovery by the respondent for brick and cement delivered on the premises by its subcontractor who claimed the same cannot be sustained on the evidence in this record, which does not present facts showing that title to the material passed to the respondent.

[7] It was, of course, proper for witnesses in forming their opinions with respect to the value of the work done by the respondent to include the actual cost of material and labor and a reasonable profit to the contractor; but the respondent was not entitled to recover for the separate items; and, although the evidence in chief was not confined to the reasonable value of the work as a whole, the learned referee undoubtedly followed the proper rule in finally estimating the damages in this regard.

[8] The plaintiff's claim on the theory of a quantum meruit is necessarily unliquidated and incapable of determination by market values or an arithmetical calculation, and it was not entitled to recover interest. Delafield v. Village of Westfield, 41 App. Div. 24, 58 N. Y. Supp. 277; Excelsior Terra Cotta Co. v. Harde, 181 N. Y. 11, 73 N. E. 494, 106 Am. St. Rep. 493; Coates v. Village of Nyack, 127 App. Div. 153, 111 N. Y. Supp. 476; Fox v. Davidson, 111 App. Div. 174, 97 N. Y. Supp. 603; Beckwith v. City of New York, 121 App. Div. 462, 106 N. Y. Supp. 175; O'Reilly v. Mahoney, 123 App. Div. 275, 108 N. Y. Supp. 53.

It follows, therefore, that the judgment should be reversed, and a new trial granted before another referee, with costs to appellant to abide the event.

INGRAHAM, P. J., and CLARKE and MILLER, JJ., concur. SCOTT, J., concurs in result.