## COLLINS BROTHERS CO. *v.* GEORGIA HOTEL CO.

1. Where a building contract contained a clause providing that if the contractor should at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of proper quality, or fail to prosecute the work with promptness and diligence, upon certificate by the architects that such refusal, neglect, or failure had occurred and was sufficient ground for such action, the owner should be at liberty to terminate the employment of the contractor for the work, to enter upon the premises and take possession, for the purpose of completing the work, of all materials, tools, and appliances thereon, and to have the work completed at the cost of the contractor, this provision was an enforceable term of the contract; and a provision in the contract for liquidated damages for delay by the contractor in completing the work, or the giving of a bond as required by it, for the faithful performance of it, would not destroy the right of the owner to take possession and complete the work upon the contingency provided by this clause.

(*a*) If the contractor abandoned the work and discharged his employees, except a watchman and superintendent, and if after a proper certificate from the architects and due notice, and an entry and effort to take possession by the owner for the purpose of completing the work, the contractor refused to allow this to be done and used or threatened to use force to drive off an employee of the owner, left upon the premises, this furnished to the owner a right of action under such clause of the contract.

2. Where in such a case it was alleged that the contractor had some of the tools and equipment locked up, refused to allow the agents of the owner to have access thereto, and obstructed the completion of the work by the owner in accordance with the terms of the contract, using threats and violence; that the contractor had secretly removed some of the materials, tools, and appliances from the premises; that some of the equipment was being damaged by exposure to the weather; and that the contractor was insolvent, the petition set out a ground for equitable relief.

(*a*) Where the contract price for the work was $332,000, of which there had been paid, upon monthly estimates, $71,567.36 prior to the abandonment by the contractor, with a reservation of ten per cent. upon the amount of the estimates by the owner, the fact that a bond for $100,000 had been given, as provided by another clause of the contract, as a guaranty that the contractor would complete the work within the time required and fulfill each and all of the terms and conditions of the contract and indemnify the owner against all loss, and the further fact that another clause of the contract provided for the payment of $100 per day as liquidated damages for delay after the time provided for the completion of the work, did not show that the owner had such an adequate remedy at law as to render an equitable petition by him demurrable on that ground.

3. Under an equitable proceeding filed by the owner of the premises against the contractor, alleging facts as indicated in the preceding headnotes, a prayer that the contractor be enjoined from obstructing, opposing, or interfering with the owner, its agents or employees, in the possession, custody, or control of the building site, and in the construction of the building, and in the possession and use of the tools, materials, machinery,

supplies, and structures on the site for the use thereof in the construction of the building, was not such a prayer for a mandatory injunction as to render the petition subject to demurrer.

NOVEMBER 13, 1914.

Equitable petition. Before Judge Charlton. Chatham superior court. January 29, 1914.

On July 1, 1913, the Georgia Hotel Company filed its equitable petition against Collins Brothers Company, alleging in substance as follows: On September 17, 1912, the plaintiff entered into a contract with the defendant for the construction of a hotel to be erected on a lot of the plaintiff at a cost of $335,000, of which $215,000 was to be paid in cash, and $120,000 in bonds of the plaintiff. Payments were to be made upon monthly certificates of the architects, to the extent of ninety per cent. of the value of the materials furnished and labor performed. All work and materials delivered on the premises, which were to form a part of the completed work, were to be considered the property of the owner, and were not to be removed without his consent, but the contractor should have the right to remove surplus materials, tools, etc., after the completion of the work. The work was to be completed by September 15, 1913, and upon a failure in that respect, except for certain specified causes, the contractor was to pay to the owner the sum of $100 per day until the contract was completed, as liquidated damages. On February 10, 1913, a modification was made in the original contract, allowing a change in the framework of the hotel by using reinforced concrete construction instead of steel construction, it being recited in the supplemental contract that the contractor had been unable to secure the steel framework in time to enable it to construct and finish the hotel by the time agreed upon.

The ninth article of the original contract was as follows: "The contractor shall give continuous attention to the work, and shall be on the works all the time, either in person or represented by a competent superintendent satisfactory to the architects, to whom the architects, or their representative, may give such directions and instructions from time to time as may be necessary. This superintendent shall have authority to act for the contractor. Should the contractor fail so to do, or should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance

of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architects, the owner shall be at liberty, after three days written notice to the contractor, to provide any such labor or materials, and to deduct the costs thereof from any money or bonds then due or thereafter to become due to the contractor under this contract; and if·the architects shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work, and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor, it shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor and his bondsmen shall be liable for and shall pay the difference to the owner. The expense incurred by the owner, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, including liquidated damages for delay, shall be audited and certified by the architects, whose certificate shall be conclusive upon the parties."

After the contractor had proceeded with the construction of the hotel until the framework of the first story had been practically completed, and the concrete forms for the second story had been constructed, but the concrete had not been poured, the contractor discontinued the work, and discharged all its laborers and employees except a watchman and superintendent. On June 7, 1913, the architects, in accordance with article nine of the contract, above quoted, certified to the plaintiff that the contractor was not giving continuous attention to the work, that it had refused and neglected to supply a sufficiency of properly skilled workmen, that it had failed, refused, and neglected to supply a sufficiency of materials of proper quality to prosecute the work with promptness and diligence, and that the conduct of the contractor was such as to authorize a

termination of its employment in accordance with the provisions of the contract. The plaintiff, the owner, thereupon notified the contractor, in writing, to give continuous attention to the work and to provide the necessary labor and materials with which to prosecute it; and that, if the contractor should fail so to do by June 16, the plaintiff would terminate its employment as contractor and would call upon its surety in the bond of $100,000, given for the faithful performance of the work, to prosecute the work to completion, if it so desired. The plaintiff further notified the contractor, that, if the latter and its surety should fail to comply with the demand on or by the 23d of June, the plaintiff would take possession, for the purpose of completing the work under the contract, of all materials, tools, and appliances upon the property, and would employ some other person to finish the work for the account of the contractor and its surety. On June 16 the plaintiff further notified the contractor, that, unless the latter should resume work on the hotel by June 19, it would not be permitted to continue the work; that after that date the surety of the contractor would be given an opportunity to complete the work, if it so desired; and that, if the surety did not so desire, then the plaintiff would proceed without delay to construct the hotel. The contractor did not resume work, and on June 20 the plaintiff gave to it notice that its employment as contractor for the construction of the hotel was terminated, and that the surety on its bond would be notified that if it should fail to assume the completion of the work by June 26 at 8 a. m., the plaintiff would take possession and proceed with it. On June 26 the plaintiff notified the contractor that it took possession of the premises for the purpose of completing the work, and also took possession of all materials, tools, and appliances thereon, and that it would proceed to have the work completed for the account of the contractor and its surety. The contractor was further notified that the plaintiff would make an inventory of all materials, tools, and appliances on the premises, and was requested to have a representative present at noon of that day, to assist a representative of the plaintiff in making such inventory. When the representative of the plaintiff reached the site where the hotel was being constructed, the representative of the contractor protested against the plaintiff's agents and representatives entering upon the premises, or making an inventory, or entering the office, where the books, papers, spirit-

levels, and office equipment were stored, or from entering the various storehouses, in which building materials and tools were supposed to be stored, and which were locked. The plaintiff's representatives proceeded to make an inventory of the tools, equipment, materials, and supplies which were on the ground and which were open to their inspection, and requested the representative of the contractor to deliver to them the keys of the office and storehouses; but this was refused. Late in the afternoon the representative of the contractor left the premises. The watchman of the plaintiff remained there. Still later the agent of the contractor returned, unlocked the office and entered it. The watchman of the plaintiff entered the office "for the purpose of taking a seat therein." The representative of the contractor directed him to leave, and, upon his refusal to do so, another representative of the contractor appeared, drew from his ·pocket a loaded pistol, and drove the watchman of the plaintiff from the office to the sidewalk. The contractor is insolvent, and unable and unwilling to complete the contract. Claims of liens, aggregating $15,797.71, have been filed by seven materialmen against the property of the plaintiff, and two of the claimants of liens have begun suit to foreclose them. The plaintiff has paid to the contractor $46,557.36 in cash and $25,000 in bonds. The plaintiff is informed and believes that the contractor has not traded or hypothecated any of the bonds to an innocent holder for value. After the contractor suspended work, in violation of its contract it secretly removed from the premises a large quantity of material, which, upon delivery on the premises, became the plaintiff's property. It is able to specify 600 sacks of cement as part of the property so removed. The contractor has also removed certain wheelbarrows, picks, office furniture and drawings, blue-prints, plans, specifications, spirit-levels, and other property to which the plaintiff is entitled, under the contract, to use in the completion of the work. The plaintiff is suffering irremediable damages in having the construction of the work delayed, in having the bonds which have been delivered to the contractor outstanding in its hands, in having the contractor remain in possession, whereby it is able to remove materials, implements, and appliances, and in having the contractor prevent the plaintiff from proceeding with the work. The concrete forms are depreciating and being injured by exposure to the weather. The plaintiff prayed for an injunction against the

contractor, its agents and representatives, restraining them from obstructing and opposing it in the possession, custody, and control of the hotel site, and the materials, tools, etc., and in the construction of the building, and from disposing of the bonds delivered to it. There was also a prayer for general relief, a temporary restraining order, and process.

The defendant demurred to the petition, on the grounds, that it set. forth no cause of action; that there was no equity in it; that it showed on its face that the plaintiff had an adequate remedy at law, in that the contract contained specific provisions for damages in case of delay in performing the contract, and in that there was a surety for the performance of all the obligations of the contract; that the petition showed that the defendant was in possession of the premises, and it was not a proper object of an injunction to evict, where the injury claimed was not irreparable in damages; and that the allegation that the defendant, without sufficient cause and justification, abandoned performance of the contract, was a mere conclusion of the pleader, without any allegations to support it. The demurrer was overruled, and the defendant excepted.

*F. P. McIntire* and *E. S. Elliott,* for plaintiff in error.

*Oliver & Oliver* and *Osborne & Lawrence,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. As to the ground on which the building was being erected, the relation established by the contract between the parties was not that of landlord and tenant or that of master and servant, but that of contractor and owner. The possession was in the contractor under and for the purpose of the contract. But it was only sub modo, and not a possession under claim of title or interest adverse to the owner. The contractor was allowed to use the premises for the purposes of the building contract, and not otherwise. Where work is done on personalty by a mechanic, his lien may be asserted by retention of possession. In regard to realty the law provides a different method of recording and foreclosure. In this case the parties in the building contract provided that if the contractor should fail to proceed with the work with proper diligence, or fail to furnish materials and labor therefor, upon certificate of the architects the owner should have the right to terminate the employment of the contractor, enter and take possession of the premises and of all materials, tools, and appliances thereon, and proceed to

have the work completed. In another part of the contract it was declared that all materials delivered on the premises, which were to become a part of the completed work, should be considered the property of the owner. The clause authorizing the owner to enter and take possession and proceed with the work, upon the happening of the contingency stated, was as much a part of the contract as any other provision in it, and was binding on the parties. 6 Cyc. 15, and citations; Tally v. Parsons, 131 Cal. 516 (63 Pac. 833). The petition alleged that the contractor did not comply with the contract in the respects thus dealt with, but abandoned the work, that the architects gave the certificate provided for by the contract, and the owner notified the contractor, but the latter refused to allow the owner to have full possession, obstructed its agents in proceeding with the building, threatened violence, and drove off the watchman placed upon the premises by the owner. The allegations show a clear violation of that part of the agreement contained in the ninth clause thereof (set out in the statement of facts), and stated a cause of action.

2. Did the owner have an adequate remedy at law, without the necessity for seeking equitable relief? If so, what was it? Counsel for the contractor, the plaintiff in error, argued that a proceeding, under the statute, for a forcible detainer furnished a sufficient remedy. But if this remedy would lie in such a case, it applies only to real estate and not to personalty, while it was alleged that the contractor proceeded secretly to carry off some of the personalty. It was said that trover would lie for the personal property. But, as it was alleged that some of it was locked up and thus out of view of the owner or his agents, that the taking away was secretly done, and that the contractor would be able to remove other materials, it is evident that this furnished no sufficient remedy. Suppose that the owner should bring an action of some character in regard to the possession of the realty and another to recover the personalty, still the contractor was alleged to be obstructing and preventing the owner from proceeding with the completion of the work. Shall the contractor be sued for trespass? It was alleged to be insolvent. Thus if a writ of forcible detainer would furnish a remedy as to the land, and trover for the personalty, partly unknown, would give a remedy as to it, and an action of trespass could be brought against the contractor if it or its agents committed a trespass, there would

be a multiplicity of suits against the same insolvent defendant as a remedy for a violation of this clause of the building contract. And in the meantime the building would be stopped and injury accruing. While the petition did not in terms allege that a multiplicity of suits would arise from suing for the realty, the personalty, and damages, yet the demurrer set up that the plaintiff had an adequate remedy at law, and it is legitimate to consider the adequacy of any particular legal remedy suggested.

The bond given by the contractor did not offer such a complete source of relief as to prevent the filing of this petition. The parties by their contract provided a right on the part of the owner to enter and complete the building, in a certain contingency. A bond was also given by the contractor, but this did not destroy the right of the owner above mentioned, as provided by the contract. Otherwise giving a security for the performance of the contract would practically avoid one of its terms. Neither did the stipulation as to damages for delay prevent the owner from proceeding as provided in the ninth paragraph of the contract, if the contingency therein mentioned happened. Still further, the bond was for $100,-000. Under the amended contract, the building was to cost $332,000. The amount paid to the contractor in cash and bonds aggregated $71,567.36. If the completion of the building should cost as much as the balance of the contract price, the further necessary expense would be $250,442.64. The contract also declared a forfeiture of $100 per day for delay. As against the different amounts which the owner might claim there would stand as security a bond for $100,000 and a reserve of ten per cent. from the estimates in making payments, as provided by the contract. Without further discussion, we think it is plain that the case is one for equitable cognizance. This is not a petition to rescind a contract for fraud, and the rule as to restoration in such cases has no application here. The proceeding is one under a clause of the contract. Nor is there merit in the ground of the demurrer that the allegations in regard to abandonment of the work by the contractor are mere conclusions.

3. Was the ground of demurrer which set up that the case was not one for injunction well founded? From what has already been said, it will be seen, that, according to the allegations of the petition, the possession of the land by the contractor was only for the

purposes of carrying out the building contract, and not as a tenant or claimant of title to or interest in the realty; that by the terms of the contract, upon a certain contingency, he no longer had any right of possession, or to proceed with the erection of the building, but the owner had the right to enter upon and take possession of the land, tools, materials, etc., and to have the work completed; that the contingency happened, and the owner, by its agents, did enter and assume dominion as far as the contractor would permit; but the latter prevented him from exercising full control or from proceeding to complete the work according to the contract, though the contractor was insolvent. We have also endeavored to show that the damages would be irreparable within the meaning of the law, and that the case was a proper one for equitable relief. What relief? Shall the owner be kept from completing the building until he can obtain a decree against the contractor that the latter shall specifically perform the ninth clause of the contract by delivering to the owner entire possession of the land, tools, materials, etc.? In the meantime some of the materials and part, if not all, of the equipment will deteriorate, and some of it be ruined. Even then, would not injunction be needed to prevent further interference with the building? The clause of the contract was inserted to prevent delay and to authorize the owner to proceed with and complete the work. It would be but a poor provision, if it only resulted in delay and multiplicity of suits against an insolvent contractor, while liens on the property were being foreclosed. This was not one of those cases where two persons have claims to property or its possession, and in which a mandatory interlocutory injunction will not be granted to evict one of them at the instance of the other. The owner, under the allegations, had in law such possession and right of possession as against the contractor as to authorize protection by injunction. The main object was restraint, not affirmative relief. *Goodrich* v. *Georgia R. Co.,* 115 *Ga.* 340 (41 S. E. 659). See also the discussion in *Mackenzie* v. *Minis,* 132 *Ga.* 323, 335 (63 S. E. 900, 23 L. R. A. (N. S.) 1003, 16 Ann. Cas. 723). In this connection the following language of Judge Story may well be quoted: "If the trespass be fugitive and temporary, and adequate compensation can be obtained in an action at law, there is no ground to justify the interposition of courts of equity. Formerly indeed courts of equity were extremely reluctant to interfere at all, even in regard

to cases of repeated trespasses. But now there is not the slightest hesitation if the acts done or threatened to be done to the property would be ruinous or irreparable, or would impair the just enjoyment of the property in future. If indeed courts of equity did not interfere in cases of this sort, there would (as has been truly said) be a great failure of justice in the country." 2 Story's Equity Jurisprudence (13th ed.), § 928.

Whether damages for delay could be claimed against the contractor while the owner may be in possession and control of the work, is not now involved. Nor need we refer to the prayer for injunction to restain the contractor from disposing of the bonds which it had received. No ground of the demurrer dealt with that part of the petition separately. As to the petition as a whole, the demurrer was properly overruled.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*