8364. SAVANNAH LIGHTING COMPANY *v.* FIDELITY
AND DEPOSIT COMPANY OF MARYLAND.

1. An owner of property employed contractors to erect certain buildings, and the contract provided that "The contractor further agrees: that should he fail to at any time provide a sufficiency of competent workmen, machinery, or materials, or that should the progress of this work at any time be such as would result in his failure to complete the work upon the date herein agreed upon, of which conditions the engineers are to be the judge, the owner shall have the right to require, by written notice, the contractor to, at his own expense, employ such additional labor, machinery, or material as the engineers may direct to be put upon the work. The contractor further agrees that should he fail to provide a sufficiency of labor, machinery, or proper materials within five days of such notice, or should he fail to remove rejected materials or objectionable employees, as hereinafter provided, or should he fail to comply with any other requirements of this agreement, the owner shall have the right, after five days' written notice, to cancel this contract." *Held:* Under such a contract, before the owner would be authorized to cancel the contract, a statement or certificate must be furnished by the engineers that in their opinion, under the terms of the contract, the conditions are such as to warrant the cancellation.

2. Where contractors give a bond for the faithful performance of a building contract, in which it is provided that "This bond is executed by the surety upon the following express conditions, which shall be conditions precedent to the right of the owner to recover hereunder: The owner shall keep, do, and perform each and every, all and singular, the mat-

ters and things set forth and specified in said contract, to be by the owner kept, done, and performed exclusively at the times and in the manner as in said contract specified. The said surety shall be notified in writing of any act on the part of the said principals, or their agents or employees, which may involve a loss for 'which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of said owner, or to any representative duly authorized to oversee the performance of said contract; and a registered letter, mailed to the president of said surety, at its principal office in Baltimore City, Maryland, shall be the notice required within the meaning of this bond;" *held*, that where the contract is abandoned by the contractors, the giving of notice thereof to the surety is a condition precedent to a recovery on the bond.

3. The petition did not set out a cause of action, and the demurrer was properly sustained.

DECIDED FEBRUARY 19,—REHEARING DENIED FEBRUARY 27, 1918.

Action upon bond; from Chatham superior court—Judge Kent presiding. December 16, 1916.

*Adams & Adams,* for plaintiff.

*Garrard & Gazan, Oliver & Oliver,* for defendant.

BLOODWORTH, J. The Savannah Lighting Company entered into a written contract with Lightman, McDonald & Company, under which the latter were to build "additions to power station and substation" of the former. A bond for the faithful performance of the contract was given to the owner by the contractors, with the Fidelity and Deposit Company of Maryland as surety. The owner contended that the contractors violated certain conditions of the contract, and it brought suit against the surety company, on the bond. A demurrer to the petition was sustained, and the plaintiff excepted.

1. The contract between the owner and the contractor is, by the express terms of the bond, made a part thereof, and both instruments must be construed together. Thus construing them; the surety company is liable to suit under each of at least two conditions: the one upon cancellation of the contract under the stipulations thereof hereinafter set out,—the cancellation to be upon the initiative of the owner; the other, the abandonment of the contract,—which would be the voluntary act of the contractors. The demurrer which was sustained was as follows: "1st. The petition as amended is not sufficient in law. 2d. The petition as amended fails to show that the notices of October 1 and October 8 were given, upon the judgment of the engineers, as required by the contract. 3d. The petition as amended fails to show that any

notice was given to the surety of plaintiff's contention that the contractor had abandoned the contract, as required by the condition in the bond that 'The said surety shall be notified in writing of any act on the part of the said principals, or their agents or employees, which may involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of said owner, or to any representative duly authorized to oversee the performance of said contract; and a registered letter, mailed to the president of said surety at its principal office in Baltimore City, Maryland, shall be the notice required within the meaning of this bond.' " It will be seen that the defendants insist, that the cancellation was of no effect, because the notices given (the substance of each of which is hereinafter copied) were not based upon the certificate of the engineers, as provided by the contract, and that no notice whatever was given that the contract had been abandoned; and that one or the other of these two conditions must be complied with before there can be a recovery; the character of the notice required as a condition of recovery being dependent upon whether the suit is brought because the contract is cancelled, or because it is abandoned. In this case another issue is presented,—whether one can give notice of cancellation, construct his petition on this theory, and then amend and recover on the ground that the contract had been abandoned. Just here we call attention to the entirely different results that follow from a cancellation of the contract and from the abandonment thereof.

In the event of cancellation the provision applicable is as follows: "The contractor further agrees that in the event of the annulment of this contract, as above provided, the owner shall have the right to enter upon the premises and take possession, for the purpose of completing the work under this contract, of all materials, tools, and appliances thereon belonging to the contractor, and to employ any other person or persons to finish the work herein provided for, and to provide all the materials necessary therefor. Upon such notice of cancellation being given, all payments to the contractor under this contract shall cease, and all moneys due or to become due the contractor shall be retained by the owner until final completion and acceptance of the work. The cost of all labor, machinery, and materials provided by the

owner for any of the purposes of this section, including the extra cost of inspection and superintendence, concerning which the certificate of the engineers shall be final, shall be deducted from any moneys due or which may become due the contractor under this contract, and the owner shall have the right to recover any excess of such costs over the unpaid balance remaining on account of said contract . . ." In case of abandonment the bond provides that "If the said principals shall voluntarily abandon said contract, . . then the surety shall have the right, in its option, to assume the said contract and to sublet or complete the same, and if said contract shall be assumed by the surety, then as such contract is duly performed, any reserve, deferred payments, and all other moneys provided by said contract to be paid to the principals, shall be paid to the surety, at the times and under the same conditions as by the terms thereof such moneys would have been paid to the principals had the contract been duly performed by them. And if said owner shall complete or relet the said contract, then any forfeitures provided in said contract against the principals shall not be operative as against the surety, but all reserves, deferred payments, and all other moneys provided in said contract, which would have been paid to the principals had they completed the contract in accordance with its terms, shall be credited upon claim the said owner may make upon said surety." ·

Having before us the above, let us consider first the conditions upon which the contract may be cancelled as stated in the contract, in connection with the notices given, the petition, and ground 2 of the demurrer. This portion of the contract is as follows: "The contractor further agrees: that should he fail to at any time provide a sufficiency of competent workmen, machinery, or materials; or that should the progress of this work at any time be such as would result in his failure to complete the work upon the date herein agreed upon, of which conditions the engineers are to be the judge, the owner shall have the right to require, by written notice, the contractor to, at his own expense, employ such additional labor, machinery, or material as the engineers may direct to be put upon the work. The contractor further agrees that should he fail to provide a sufficiency of labor, machinery, or proper materials within five days of such notice, or should he fail to remove rejected materials or objectionable employees, as here-

inafter provided, or should he fail to comply with any other requirements of this agreement, the owner shall have the right after five days written notice, to cancel this contract." ˙ The further provisions in reference to cancellation of the contract are hereinbefore set out in that portion of this opinion which refers to the "results that follow from cancellation of the contract," and attention is directed thereto.

The owner, evidently acting upon these provisions, sought to cancel the contract; for on October 1, 1914, he wrote to the contractors and sent a copy of his letter to the surety company, and in this letter said: "We enclose herewith a copy of letter of even date received from the Scofield Engineering Company, our consulting engineers . . . This letter also certifies as to the extension in time allowed account of delays for which you were not responsible and because of these additions. This will confirm the instructions given you by them, . . and the extension in time stated in their letter. No work on your contract having been done since September 21, please take notice that unless you or your surety shall within five days from date hereof resume work with such labor, equipment, and material as to, in the judgment of the engineers, insure completion within the time now granted you, your contract shall become cancelled, and we shall take possession for the purpose of completing the work as provided in the contract." On October 8, 1914, the owner gave to the contractors and the surety company another notice, as follows: "In accordance with the provisions of your contract for additions to our main and sub-stations, dated May 21, 1914, we hereby cancel the same by reason of the failure to resume work, as notified you on October 1st, 1914, and have taken possession of work, for the purpose of building the same on your account." It will be noticed that neither of these letters or notices contained any statement that this action is taken upon the advice, opinion, or certificate of the engineers. For this reason it is insisted by defendant that these notices are insufficient to authorize a cancellation of the contract,—that under them the owner had no right to cancel the contract and take charge of the work and complete it.

Where there is such a contract and bond as in the instant case, the contract can not be cancelled by the owner unless the cancellation is based upon some action or notice in reference thereto by

the engineers. General Supply & Construction Co. *v.* Goelet, 149 App. Div. 80 (133 N. Y. Supp. 978; Hoyt *v.* Pomeroy, 87 Conn. 41 (86 Atl. 755). The headnote in 133 N. Y. Supp., *supra,* is as follows: "Under a building contract which permitted the owner to terminate the contract on the architect certifying that failure of the contractor to comply with the contract warranted termination, notice by the owner to the contractor of intention to take charge of the work was ineffectual, in the absence of such certificate." In Hoyt *v.* Pomeroy, *supra,* as reported in 86 Atl. 755, the first headnote is as follows: "A stipulation in a building contract authorizing the owner to terminate the contract and complete the work, on certificate of the architect that the failure of the contractor to properly prosecute the work justifies it, must be strictly construed, and the architect must act impartially on his own judgment and must express his opinion in writing that there is sufficient ground to take the work out of the contractor's hands, and a personal letter from the owner to the contractor reciting the failure of the contractor to perform the contract in accordance with the specifications, and notifying that the owner will complete the work, with the architect's memorandum 'O. K.,' is insufficient to justify the owner in taking possession of the premises and completing the work." See also Wilson *v.* Borden, 68 N. J. L. 627 (54 Atl. 815); White *v.* Mitchell, 30 Ind. App. 342 (65 N. E. 1061). In the case of *Southern Mfg. Co.* v. *Moss Mfg. Co.,* 13 *Ga. App.* 847 (81 S. E. 263), cited by plaintiff in error, the court said: "The stipulation as to the certificates was held to be a condition precedent to payment under the agreement of the parties, and no recovery could be had by the plaintiffs unless the defendant had waived the condition."

We must keep in mind the fact that this suit is against the surety company, and that "The sureties on the bond given for the performance of a building contract by the contractor are bound only by the express terms of their contract, and have a right to stand upon its precise terms." Tally *v.* Parsons, 131 Cal. 516 (63 Pac. 833). From what is said above we reach the following conclusions: (*a*) The notices given by the owner to the contractors and surety company on October 1st and October 8th were given to cancel the contract under the provisions thereof, showing that the owner then considered the contract as subsisting and not

abandoned.  (*b*) The plaintiff, having undertaken to cancel the contract, was bound to do so in strict accordance with its requirements.  (*c*) One of these requirements was a statement or certificate from the engineers, but the plaintiff failed or neglected to obtain such a certificate, and hence there was a failure upon its part to legally cancel the contract.  (*d*) Having failed to legally cancel the contract, the surety cannot be held liable, since the liability of the surety is measured by the conditions and provisions of the contract and of the bond, which are to be construed together in ascertaining the duties and responsibilities, rights and remedies of the surety.  (*e*) The second ground of the demurrer is good.

2. Was it necessary for the plaintiff to give to the surety any notice of the abandonment of the work by the contractors?  The bond provides as follows: "Now, therefore, the conditions of this obligation is such, that if the said principals shall faithfully perform said contract on their part, according to the terms, covenants, and conditions thereof (except as hereinafter provided), then this obligation shall be void; otherwise to remain in full force and effect.  This bond is executed by the surety upon the following express conditions, which shall be conditions precedent to the right of the owner to recover hereunder:  The owner shall keep, do, and perform each and every, all and singular, the matters and things set forth and specified in said contract, to be by the owner, kept, done, and performed exclusively at the times and in the manner as in said contract specified.  The said surety shall be notified in writing of any act on the part of the said principals, or their agents or employees, which may involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of said owner, or to any representative duly authorized to oversee the performance of said contract; and a registered letter, mailed to the president of said surety, at its principal office in Baltimore City, Maryland, shall be the notice required within the meaning of this bond."  Clearly the act of abandonment, leaving the building in an unfinished state, with the probability of involving the surety in a lawsuit, is an act on the part of the contractors "which may involve a loss for which the surety is responsible."  Therefore notice to the surety of abandonment is essential to recovery, for this notice is provided for in the bond under the clause, "The

owner shall keep, do, and perform each and every, all and singular, the matters and things set forth and specified in said contract, to be by the owner, kept, done, and performed exclusively at the times and in the manner as in said contract specified." This is one of the "express conditions" named in the bond "which shall be conditions precedent to the right of the owner to recover hereunder."

The plaintiff insists that no such notice is necessary, and cites the case of Smith v. Jewell, 104 Md. 269 (65 Atl. 6). While it was there held that the contract under consideration by the court did not contemplate abandonment by the contractor, and did not fall within that provision of the contract which refers to the certificate of the engineer, and the bond, so far as the record shows, contained no provision requiring notice in case of abandonment, yet the fact is that the owner actually gave the surety written notice, stating that the contractor had abandoned the work and that the owner would hold the surety financially responsible for losses, delays, or other expenses connected with the failure of the contractor to abide by the terms of the contract, and the court held the surety liable because of the notice given to it. By reference to the statement of facts contained in the Jewell case it will be seen that on May 8 the owners sent a written notice to Jewell that, as he had refused to furnish the necessary labor to prosecute the work, and had notified plaintiffs of his intention to abandon it, they should proceed on Friday, May 15, at 8 a. m., to provide the necessary labor therefor, at the cost of the contractor. On May 12 the owners sent to the surety company a copy of that notice, adding that as Jewell had failed to comply with his said contract, they would proceed to complete said work at his expense, holding the surety company on its bond. On May 13 a second written notice was sent to the surety company by the owners, stating that Jewell had abandoned the work, and that they would hold the surety financially responsible for any loss, etc., connected with the contractor's failure to abide by the terms of said contract. In the case at bar no notice of abandonment was given by the owner to the surety company. In the case of Collins Co. v. Georgia Hotel Co., 142 Ga. 703, 709 (83 S. E. 660), it is stated that "The petition alleged that the contractor did not comply with the contract in the respects thus dealt with, but abandoned the work, that the

architects gave the certificate provided for by the contract, and the owner notified the contractor."

Counsel for the plaintiff in error cite also the case of Heidbrink *v.* Schaffner, 147 Mo. App. 632 (127 S. W. 418). An examination of the bond given in that case will show that it made no provision for notice to the surety in the event of abandonment; and, so far as the report of the case shows, there is no such provision in the contract. On the contrary, the bond contained a provision that the signers thereof acknowledged themselves "to be bound unconditionally for the faithful performance of said contract." In the opinion in that case the statement is made that "it is plain the contingency of abandonment by the contractor was not provided against." In the instant case abandonment was provided against by the express terms of the bond, and, under the provisions of the bond, when the contract was abandoned the surety had the option to "assume the said contract and to sublet or complete the same," and, if assumed and duly performed, "any reserve, deferred payments, and all other moneys provided by said contract to be paid to the principals shall be paid to the surety." This is a valuable right, and to deprive the surety of the above option and this right without notice would be in direct and absolute violation of the terms of the bond. The plaintiff having absolutely failed to give any notice of "abandonment," we hold that the third ground of the demurrer is good.

3. As shown above, the plaintiff gave notice of cancellation only, and in his original petition planted his case squarely upon the ground of cancellation. Neither in the petition nor in the amendment of January 4, 1916, did the plaintiff make any reference to "abandonment," and we hear nothing of abandonment until the term at which the case was tried. The notices and pleading relied upon to show abandonment utterly fail in this respect, and refer only to cancellation. Attention is directed to the fact that the letter of October 1 puts the contractors and the surety on notice that the time has been extended for completing the work, and also notified them that, unless certain things named in the letter were done within five days, "your contract shall become cancelled, and we shall take possession for the purpose of completing the work as provided in the contract." This letter plainly shows that the plaintiff had no reference to an abandonment of the contract, for

it calls attention to the extension of time granted, and the words, "take possession for the purpose of completing the work as provided in the contract," are practically the same as those in that portion of the contract which provides for cancellation.

This shows that the plaintiff considered the letters as referring to cancellation, and not abandonment, and it so treated them in preparing the petition. Note also that the letter of October 8 says: "In accordance with the provisions of your contract, . . we hereby cancel the same, . . and have taken possession of work for the purpose of building the same on your account." This the owner had the absolute right to do under the contract, if it was legally cancelled, but if the contract was abandoned, the owner had no such right until after the surety had exercised its option "to assume the said contract and to sublet or complete the same."

Though counsel for the plaintiff in error earnestly insist that the petition as originally drawn based the right of recovery upon the abandonment of the contract by the contractors, the petition itself will not support this contention, and the court will look to the petition in its entirety, including the letters of October 1 and October 8, which are a part thereof, to determine its nature. Under a well-recognized principle, the petition will be construed most strongly against the party in whose favor it is drawn. We think the petition clearly shows that it is based upon an attempted cancellation of the contract by the owner in pursuance of and in accordance with the provisions of the contract, and not upon abandonment by the contractor, as provided in the bond. Having elected thus to proceed and having failed to give any notice of abandonment, and the petition failing to show any such notice, we think the petition fails to set out a cause of action, and that the demurrer was properly sustained.

*Judgment affirmed. Broyles, P. J., concurs. Harwell, J., dissents.*

HARWELL, J., dissenting. To the original petition the defendant demurred in writing, on the ground that it was insufficient in law, and, after the judge had announced that he would sustain the demurrer, the plaintiff amended the petition. The defendant then demurred orally upon the following grounds: (1) The petition as amended is not sufficient in law. (2) The petition as amended fails to show that the notices of October 1 and October 8 were

given upon the judgment of the engineers, as required by the contract. (3) The petition as amended fails to show that any notice was given to the surety of plaintiff's contention that the contractor had abandoned the contract, as required by the condition in the bond that "The said surety company shall be notified in writing of any act on the part of the said principals, or their agents or employees, which may involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of said owner, or to any representative duly authorized to oversee the performance of said contract; and a registered letter, mailed to the president of said surety at its principal office in Baltimore City, Maryland, shall be the notice required within the meaning of this bond." The court sustained the demurrer and dismissed the petition.

Did the petition as amended fail to set out a cause of action, in that it failed to show that the notices of October 1 and October 8 were given upon the judgment of the engineers? In passing upon this question it will be necessary to consider certain clauses of the contract between the owner and the contractors, as follows:

"The contractor further agrees: that should he fail to at any time provide a sufficiency of competent workmen, machinery, or materials, or that should the progress of this work at any time be such as would result in his failure to complete the work upon the date herein agreed upon, of which conditions the engineers are to be the judge, the owner shall have the right to require, by written notice, the contractor to, at his own expense, employ such additional labor, machinery, or material as the engineers may direct to be put upon the work.

"The contractor further agrees that should he fail to provide a sufficiency of labor, machinery, or proper materials within five days of such notice, or should he fail to remove rejected materials or objectionable employees, as hereinafter provided, or should he fail to comply with any other requirements of this agreement, the owner shall have the right, after five days written notice, to cancel this contract.

"The contractor further agrees that in the event of the annulment of this contract, as above provided, the owner shall have the right to enter upon the premises and take possession, for the purpose of completing the work under this contract, of all materials,

tools, and appliances thereon belonging to the contractor, and to employ any other person or persons to finish the work herein provided for, and to provide all the materials necessary therefor."

It is well to keep in mind that the plaintiff amended his petition by alleging that "on the 21st day of September the principals, Lightman, McDonald & Co., wrongfully abandoned the said contract and the work thereon, and wrongfully refused to proceed with said contract or to continue work thereon, and wrongfully abandoned the premises of petitioner on which they were working, and thus made it necessary for your petitioner to take charge of and complete the work, which your petitioner did do." No exception was taken by the defendants to the allowance of the amendment, and therefore the pleading stands before the court as amended, and the question is whether the demurrer to the petition as amended should have been sustained upon either of the three grounds of the oral demurrer. The clause of the contract upon which the defendant relies does not attempt to deal with abandonment of the work by the contractor. In fact, in the contract between the owner and the contractor there is no provision dealing with the question of abandonment. The clause upon which the defendant relies, in contending that the judgment of the engineers should have been obtained before the notices were sent, provides that the contractor agrees that "should he fail to at any time provide a sufficiency of competent workmen, machinery, or materials, or  .  .  should the progress of this work at any time be such as would result in his failure to complete the work upon the date herein agreed upon, of which conditions the engineers are to be the judge, the owner shall have the right to require, by written notice, the contractor to, at his own expense, employ such additional labor, machinery, or material as the engineers may direct to be put upon the work." A fair construction of this clause means that the judgment of the engineers shall be invoked when, in the opinion of the owner, there is an insufficiency of competent workmen, machinery, or materials, or the progress of the work at any time would result in the failure of the contractor to complete it within the date agreed upon. It evidently contemplates that the work is in progress, that the contractors are still at work upon the job, and if the owner thinks that they are making insufficient progress, then he may request the judgment of the engineers, and

if in their opinion there is an insufficiency of workmen, etc., or the contractors are not making such progress as will probably result in its completion upon the date agreed upon, then he may give the written notices requiring them to put additional labor, machinery, and material on the work. It would be absurd to say that the judgment of the engineers should be obtained in order to determine whether or not the contractors would likely complete it with the workmen and materials being used on the job within the date agreed upon, when the contractors have completely abandoned the work. Abandonment, of course, means that they have quit the work entirely, that they do not expect to complete it, or will not attempt to complete it. In construing a contract the court should seek to effectuate the intention of the parties making it, and should ascertain that intention from the language employed in the instrument itself. This court has said that contracts like that in the instant case, which is substantially one of fidelity insurance, are to be governed by the rules applicable to insurance companies, and when the contract is fairly susceptible of two constructions, one favorable and one unfavorable to the indemnity company, the latter is to be adopted. It is a familiar rule of law that ambiguities are to be construed most strongly against the insurer. *John Church Co.* v. *Ætna Indemnity Co.,* 13 *Ga. App.* 831 (80 S. E. 1093) ; *Hall* v. *General Accident Assurance Corp.,* 16 *Ga. App.* 74 (85 S. E. 600) ; American Surety Co. *v.* Pauly, 170 U. S. 133, 144 (18 Sup. Ct. 552, 42 L. ed. 597) ; *Home Savings Bank* v. *Mass. Bonding &c. Co.,* 19 *Ga. App.* 352, 362 (91 S. E. 494), and citations. The contract or the bond contains nothing that requires the certificate or judgment of the engineers where the contract is abandoned by the contractor. In Heidbrink *v.* Schaffner, 147 Mo. App. 632 (127 S. W. 418), the Missouri court holds, that a building contract, providing that the owner, on a certificate by the architect of the contractor's failure to perform any of the agreements, may on three days notice terminate the contract and complete the work, and that the expense incurred by the owner shall be certified by the architect, whose certificate shall be conclusive, does not provide against the contingency of abandonment of the work by the contractor, and where the contractor abandons the work, the owner may complete it without obtaining the architect's certificate; the word "agreements" being synonymous with the word "stipula-

tions." In the opinion in that case it is said: "We accede to the proposition asserted by counsel for defendants that a stipulation for the certificate of an architect about whether breaches of a contract have occurred or payments are due under it, or any like matter, requires the party who seeks damages for a breach embraced in the stipulation to allege and prove a certificate was given." But the court goes on to observe that stipulations of this sort as to certificates from an engineer do not apply where the contractor has abandoned the contract and the suit is brought on his bond; and it is stated that "this conclusion was announced in a case on an identical bond and contract in Fuller v. Doyle, 87 Fed. 687, 692." See also El Paso &c. R. Co. v. Eichel (Tex. Civ. App.), 130 S. W. 948; Dorn v. Ebbesen, 72 Wis. 284 (39 N. W. 535).

In the case of Smith v. Jewell, 104 Md. 269 (65 Atl. 6), the contract provided that if the contractor should fail to supply a sufficiency of skilled workmen, or fail in the performance of any of his agreements, the owner might, on receiving a certificate of the architect to that effect, provide labor and deduct the cost thereof, and if the architect should certify that the contractor's failure was sufficient ground for such action, the owner might terminate the employment and complete the work at the expense of the contractor. The court held that this language did not apply to the abandonment of the contract by the contractor, and that on the contractor, voluntarily and without excuse, abandoning the work, whether nearly completed or not, the owner, on giving notice to him and his surety of his purpose to complete the work, was entitled to recover from them the difference between the reasonable cost of completing the work and the balance of the unpaid contract price, without securing the architect's certificate called for in the contract. See also Fuller v. Doyle, El Paso &c. R. Co. v. Eichel, and Dorn v. Ebbesen, supra. In Mallard v. Moody, 105 Ga. 400, 404 (31 S. E. 47), it was said: "It is usual to constitute the engineer a referee as to the meaning of the plans and specifications which are his own invention and handiwork, a certain construction of which is necessary to the proper erection and completion of the work. His powers cannot be enlarged by implication, but they will be confined strictly within the terms of the contract."

The original petition practically charges an abandonment of the work by the contractors. It alleges that the "principals, wrong-

fully and in violation of their contract, discontinued the work contemplated by the contract, and did not do any work thereon after September 21, 1914." Accordingly, the lighting company on October 1, notified the contractors that unless "you or your surety shall, within five days from the date hereof, resume work," etc., "your contract shall become cancelled, and we shall take possession for the purpose of completing the work as provided in the contract." While this language does not use the word abandon, it substantially charges an abandonment of the contract. The amendment filed by the plaintiff, which has already been set out, distinctly alleged an abandonment of the work by the contractor, and we are now dealing with the petition as amended. I think, therefore, that under the contract and the bond, no certificate or judgment of the engineers was required, when the contractor abandoned the work, but that the lighting company might proceed to give notice to the surety of such default on the part of the contractor, and in order that the surety might exercise the option which it had, of completing the work, or might take steps as it might think necessary in order to protect itself; and upon the failure of the surety company to take possession and complete the work, the lighting company might proceed to do so.

We come now to the second proposition: The third ground of the oral demurrer is that the petition failed to show that any notice was given to the surety of the plaintiff's contention that the contractors had abandoned the contract, as required by the condition in the bond that the surety "shall be notified in writing of any act on the part of the said principals, or their agents or employees, which may involve a loss for which the said surety is responsible," etc. The notices have already been referred to. They were given on October 1 and October 8. The letter of October 1 was mailed to the contractor, and a copy of it also mailed to the surety company, by registered mail. This letter addressed to the contractor said: "No work on your contract having been done since September 21, please take notice that unless you or your surety shall within five days from date hereof resume work with such labor, equipment, and material as to, in the judgment of the engineers, insure completion within the time now granted you, your contract shall become cancelled, and we shall take possession for the purpose of completing the work as provided in the con-

tract." This was followed by the letter of October 8, a copy of which was also mailed to the surety company, in which both parties were informed that, in accordance with the provisions of the contract, the owner thereby cancelled the contract by reason of the failure to resume work as previously notified, and had taken possession of the work for the purpose of completing the same on the contractor's account. The clause of the bond which provides for notice simply says that the surety "shall be notified in writing of any act on the part of the said principals, or their agents or employees, which may involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of said owner." It is immaterial, it seems to the writer, whether the notices were given upon the right or the wrong theory, if they were a substantial compliance with the clause in the bond requiring notice to the surety company of any act on the part of the principal which might involve a loss to the surety. The writer thinks that the notice given was a sufficient compliance with that clause in the bond quoted above to put the surety company on notice that the contractors had discontinued the work since September 21, and that it would treat such discontinuance as an abandonment of the work. It notified the surety company that the owner would give them five days after October 1 in which to resume the work, and that at the end of that time if they did not resume the work, the owner would take possession and complete it. This notified the surety company that the owner would, five days after October 1, treat the failure of the contractors to resume work as an abandonment of the work, and gave the surety company an opportunity, at its option, to assume the contract and sublet or complete it, as provided in the bond in the event of abandonment. It certainly put the company on notice of this act on the part of the principal, which might involve a loss to the surety company, and that is all that the notice required, i. e. to notify them of any act on the part of the principal which might involve a loss to the surety company. It is true that a clause in the bond says that if the principal shall voluntarily abandon the contract, the surety shall have the right at its option to assume the contract or to sublet or complete the same, but by this notice the surety company was not deprived of this right. The notice in fact called on the contractor or the

surety company to resume work on the job. The surety company had eight days after the notice was given in which to exercise this option, if it desired to do so. How could the owner have put the surety company upon notice more specifically and definitely than it did? It notified the surety of the discontinuance of the work by the principal; it called on the surety to resume work within a certain time, and in effect, if not in exact language, notified the surety that a further discontinuance would be treated as abandonment; it certainly put the surety upon notice that this default. on the part of the principal might involve the surety in a loss. The notice simply stated the facts to the surety company, and that is all that the clause in the bond with reference to the notice required. I think, therefore, that the allegations in the petition on the question of notice to the surety company were sufficient to withstand the attack made by the demurrer, and to take the case to a jury, and that the court erred in sustaining the demurrer and in dismissing the petition.