*Chambers & Deaver,* for defendant.

---

8161, 8162. HOME SAVINGS BANK OF COLUMBUS, GEORGIA, *v.* MASSACHUSETTS BONDING AND INSURANCE COMPANY; and *vice versa.*

The evidence warranted the verdict, and, no harmful error of law appearing, the judge did not err in overruling the motion for a new trial.

DECIDED FEBRUARY 16, 1917.

Action on bond; from Muscogee superior court—Judge R. W. Freeman. January 27, 1916.

In the years 1911, 1912, and 1913, and for a number of years prior thereto, George H. Waddell was the treasurer of the Home Savings Bank of Columbus, Georgia. The Massachusetts Bonding & Insurance Company insured for the bank his fidelity as such treasurer, and issued therefor its "Schedule Bond No. S-21499," in the amount of $5,000, to take effect on April 10, 1911. The material parts of this bond were as follows:

"Now, therefore, for and in consideration of a stipulated premium, paid or agreed to be paid by the employer, The Massachusetts Bonding and Insurance Company, a corporation existing under and by virtue of the laws of the Commonwealth of Massachusetts (herein designated 'the Company'), hereby covenants and agrees to and with the employer that it will, at the expiration of three months after proofs of loss shall have been furnished to the Company, pay to the employer the amount of any loss or damage that shall happen to the employer, in respect of any funds, property, or estate belonging to or in the custody of the employer, through the dishonesty of any of the employes, or through any act of omission or commission of any of the employes, done or omitted in bad faith, and not through mere negligence, incompetency, or any error of judgment, and whether such dishonesty or such act of

omission or commission occurs in the performance of any duty or trust specially assigned to such employe or occurs otherwise; subject, however, to the following provisions and agreements:

"1.    There shall be no liability on the part of the Company unless the act or default through which such loss may happen shall, in respect of the employes originally named in the schedule, occur on or after the 10th day of April, A. D. 1911, and shall, in respect of any employe hereafter added to the schedule by notice and acceptance as hereinafter provided, occur on or after the date upon which his or her name shall have been added to the schedule, and shall, in respect of all employes, occur prior to or on the 9th day of April, A. D. 1912, or prior to or on any other date to which this bond may be continued.

"2.    There shall be no liability hereunder on the part of the Company, unless such loss or damage shall be discovered during such designated term, or within one year after the final expiry (as determined by the term herein specified and any and all continuances) of this bond, and within one year after the cancellation or termination of this bond or of any engagement hereunder in respect of the employe causing a loss.

"3.    The Company's liability on account of any employe shall in no case exceed the amount set opposite his or her name in the schedule hereto attached, as such name and amount now appear or as they may be hereafter added to or changed upon the schedule in accordance with the provisions therefor hereinafter set forth.

"4.    If the employer requires indemnity in respect of any employe  .  .  in the schedule named in an amount larger or smaller than therein specified, the employer shall give to the Company written notice specifying in respect of a change in the amount of indemnity, the new amount and the date from which it shall be effective, it being agreed and understood that thereby such name or names and specifications shall be deemed to be added to the schedule hereto attached, and the obligations of the employer and the Company in respect thereof shall be subject to all the provisions herein contained and in every way as though such name and specifications had formed part of the original schedule.

"5.    Whatever number of engagements may be made by the Company with the employer in respect of any employe, either by way of separate bonds, or by acceptances as herein provided, or by

continuances as herein provided, the aggregate liability of the Company for all losses under all its engagements shall not exceed a sum equal to the amount of the largest of the engagements under which such losses occurred, nor shall the Company be liable under any specific engagement for any loss occurring under any other engagement.

"6.    The Company shall in no event be liable for  .  .  any act or default of an employe occurring after a loss in respect of such employe shall have come to the knowledge of the employer.

"7.    The Company shall be primarily responsible to the limit of its bond in respect of any employe, for any loss sustained by the employer through the act or default of such employe, without regard to any other security or indemnity held by the employer. . ."

"11.    The employer warrants that the following statements are true:

"(a)    Each employe named in the schedule has, while in the service of the employer, discharged his or her respective duties in good faith (mere negligence or error of judgment not being considered) and with honesty, so far as the employer has knowledge.

"(b)    There is at present, so far as the employer has knowledge, no shortage in the accounts of any employe bonded hereunder, and no misappropriation by any such employe of any funds or other property belonging to, or in the custody of, the employer.

"(c)    In so far as the employer has knowledge, no one of said employes habitually gambles, uses intoxicating liquors to excess, frequents houses of ill-fame, or is a spendthrift living beyond his or her means.

"(d)    That the written statements made to the Company by the employer, regarding the indebtedness to the employer of the several employes named in the schedule, truthfully and correctly show the amounts of indebtedness of such employe to the employer at the time of making such statements, *so far as the employer has knowledge.* A copy of said statements, certified by the Company, is delivered to the employer with this bond, and receipt of same is hereby acknowledged by the employer.

"In case of the breach of any of the foregoing warranties in respect of any employe, then this bond shall be void in respect of such employe only, and the Company shall be relieved from all liability in respect of such employe.

"12. The employer further covenants and agrees that the employer will not at any time give the Company notice of the appointment of, or request the Company to become bound hereunder, in respect of, or to renew or continue this bond or any engagement hereunder in respect of any employe who has, *to the knowledge of the employer,* ever been guilty of dishonesty, or who, to the knowledge of the employer, habitually gambles, uses intoxicating liquors to excess, frequents houses of ill-fame, or is a spendthrift living beyond his or her means; and that on the notice given by the employer to the Company of the appointment of any such new employe, and upon the request for any renewal or continuance of this bond or any engagement hereunder, the employer will, upon request of the Company, state truthfully in writing the amount, if any, which such employe or employes may, *to the knowledge of the employer,* then owe the latter by overdraft, promissory note, as endorser or otherwise; and any breach of this covenant and agreement on the part of the employer shall render any such acceptance, renewal, or continuance executed by the Company in behalf of any and every such employe void, and relieve the Company from all liability on account of every such employe.

"A copy of every statement so made by the employer to the Company regarding the indebtedness of any employe shall be certified by the Company and delivered to the employer with the Company's acceptance of the risk or renewal of this bond.

"13. The employer further covenants and agrees that if at any time during the term for which this bond is written, or during any continuance hereof, there shall come to the knowledge of the employer the fact that any employe for whom the company may be bound under this bond is dishonest, or has in bad faith, and not through mere negligence or error of judgment, done or neglected to do any matter or thing, or that any such employe habitually gambles, uses intoxicating liquors to excess, frequents houses of ill-fame, or is a spendthrift living beyond his or her means, the employer shall promptly notify the Company of such fact, and the failure so to do shall relieve the Company from all liability on account of such employe, in respect of loss or damage thereafter arising."

"17. The employer shall, whenever required by the Company, give all information *within the employer's knowledge* or which can

be obtained from the employer's books or records, and shall render all assistance (not pecuniary) which will in any way aid in the apprehension, arrest, or prosecution of any employe for any criminal offense committed by such employe involving the liability of the Company, and in like manner shall aid and assist the Company in suing for or obtaining reimbursement from such employe or from the employe's estate or from other sources any moneys which the Company may have paid or become liable to pay under this bond on account of such employe.

"18. The employer shall give notice in writing to the Company promptly after knowledge thereof by the employer of any loss in respect of which liability of the Company is claimed, and shall within six months thereafter furnish the company proof of such loss, and in default thereof the liability of the Company therefor shall terminate.

"19. All notices to be given by the employer to the Company shall be by registered mail addressed to the Company at its principal office in the City of Boston, and all notices to be given by the Company to the employer shall be by registered mail addressed to the principal office of the employer.

"20. In case the employer be a corporation, the knowledge of its board of directors or trustees or of any executive officer, such as the president, vice-president, cashier or assistant cashier of a bank, and corresponding officers of a savings bank or trust company, who shall receive a salary from the corporation and shall be active in its affairs, shall be deemed to be the knowledge of the employer, excepting that the knowledge of any such directors, trustees, or officers in collusion with the employe through whose act the loss may arise shall not charge the corporation.

"21. So long as the Company and the employer agree so to do, this bond may be continued in force from year to year, and in case of such continuance the Company's liability in respect of the employes then in the employer's service and for whom the Company may then be bound hereunder shall be the same as if this instrument had been originally written for a term including the period of such continuance." (All italics are ours.)

Accompanying the application of Waddell for this bond was a statement made by the bank, as follows:

"The foregoing applicant has been in the service of the under-

signed employer fourteen years and————months, and the duties required have always been performed in a faithful and satisfactory manner. The accounts were last audited on the 18th day of December, 1910, and were correct in every particular. There has never come *to the notice or knowledge of the employer* any act, fact, or information tending to indicate that the applicant is negligent, unreliable, deceitful, dishonest, or unworthy of confidence. *As far as the employer knows,* applicant's habits are good, *and the employer knows* no reason why you can not safely assume the suretyship applied for. The above and foregoing statements and representations are made for the purpose of inducing the Massachusetts Bonding & Insurance Company to execute said bond. Dated at Columbus, Ga., the 18th day of March, 1911.

"Home Savings Bank (employer), by Rhodes Browne, Pres't."

On April 10, 1912, the foregoing bond was renewed for one year, and in the renewal Waddell was bonded for $10,000. The material parts of the renewal certificate are as follows:

"In consideration of the sum of twenty-five and no/100 dollars, Massachusetts Bonding and Insurance Company, a corporation duly incorporated under the laws of the Commonwealth of Massachusetts, hereby continues in force Schedule Bond No. S-21499 in favor of Home Savings Bank, Columbus, Ga., on behalf of persons named in annexed schedule, in the positions and for the sums therein specified, for the period beginning the ninth day of April, 1912, and ending the ninth day of April, 1913, subject to all the covenants and conditions set forth and expressed in said schedule bond heretofore issued on the tenth day of April, 1911. Provided the aggregate liability of Massachusetts Bonding and Insurance Company, from the date of the issuance of said schedule bond to the date of the expiration of this certificate, for or on account of any act or acts of any one of said persons shall not exceed the sum written opposite that person's name upon the attached schedule."

Before the foregoing renewal Waddell made an application for such renewal, on April 5, 1912. Accompanying this application was a statement of the bank, dated April 5, 1912, identical in form with the statement dated March 18, 1911. On March 10, 1913, the Massachusetts Bonding and Insurance Company renewed said bond in favor of the bank for the year commencing April 9,

1913, issuing a renewal certificate therefor. This certificate was identical in form with the first renewal certificate, except that the bond was renewed for $15,000 instead of $10,000. Prior to this last renewal the bank made the following statement to the defendant:

"To Massachusetts Bonding and Insurance Company: This is to certify, that the books and accounts of our officers and employes as per attached schedule were examined by us from time to time in the regular course of business, and we found them correct in every respect, all moneys or property in their control or custody being accounted for, with proper securities and funds on hand to balance their accounts, and they are not now in default. They have performed their duties in an acceptable and satisfactory manner, *and we know of no reason* why the guaranty bond should not be continued. Dated at Columbus, Ga., this——day of ——— 19——.

"Home Savings Bank of· Columbus, Ga., by Rhodes Browne, President."

The bank made one other statement to. the bonding company, to wit, on October 10, 1912, at which time the liability on the bond was increased from $10,000 to $15,000, to wit:

"Oct. 10th, 1912. The Massachusetts Bonding and Insurance Company, of Boston, Mass., is hereby notified that on the respective dates shown below we made the following changes in list of officers or employees covered under its schedule bond No. S-21499-R-17577. All appointments to any position and any increase in amount of security required of officers or employees appear as "additions," all removals, retirements, or transfers of officers or employees, and any decrease in amount of security required of an of-. ficer or employee appear as 'deductions.' *The employer* (*assured*) *knows no reason* why the Company can not safely become surety for the officers or employees added, and warranty is hereby made that the books and accounts of such officers or employees are now correct in every respect, all moneys handled by them being accounted for, and that all books and accounts will be examined from time to time in the regular course of business, but at least annually. [Then follows a tabulation and schedule showing it was requested that the bond of Waddell be increased from $10,000 to $15,000.] Dated at Columbus, Ga., the 19th day of October, 1912.

"Home Savings Bank of Columbus, by Rhodes Browne, Pres't."

During the period of the said fidelity bond the bank suffered a loss on account of acts of commission and omission of George H. Waddell; for which it brought suit in June, 1914, for $15,000, against the bonding company, based upon the said bond and the renewals thereof. On February 15, 1915, the plaintiff filed an amendment to its original petition, in order to meet certain special demurrers of the defendant, and in the amendment set forth in detail the manner, kind, and amount of the losses sustained by the plaintiff through acts of commission and omission of George H. Waddell, and alleged, that the statements which it made to defendant in connection with the application of George H. Waddell, at the time the original bond was written and when the original bond was renewed, and whatever statements were made by plaintiff to defendant, were true so far as plaintiff had knowledge, and were made honestly and in good faith, and that at the time they were made the plaintiff had no knowledge of loss or damage caused it by the said Waddell, and no knowledge that he had not been faithfully and honestly performing his duties with the plaintiff as treasurer. The plaintiff further alleged in the amendment that about August 9, 1913, the Audit Company of the South commenced an examination of the books and accounts of the plaintiff, and that on August 12, 1913, Rhodes Browne, president of the plaintiff, first had knowledge that Waddell as treasurer was short in his accounts with the plaintiff, but that on August 12, 1913, neither the said Browne nor the plaintiff was aware of the amounts and special conditions of the shortage, or whether it occurred during the original period of the bond and the renewals thereof or prior thereto, or whether it was a loss in respect of which the plaintiff could claim liability from the defendant; and that prior to August 12, 1913, the plaintiff had no knowledge whatever of any dishonest acts of Waddell. The plaintiff further alleged that at said time (August 12, 1913) the Audit Company of the South was unwilling and unable to report definitely to the plaintiff that said Waddell was short in his accounts, and that the Audit Company, on the night of September 20, 1913, made its first report of a definite character to the plaintiff that Waddell was short in any particular amount in his accounts with the plaintiff; and the plaintiff promptly thereafter (September 23, 1913) gave notice in writing to the defendant of the approximate amount of the loss caused the

plaintiff by Waddell and discovered up to September 20, 1913. In the petition as amended it is alleged in detail how the losses caused through the dishonesty of Waddell occurred.

The defendant filed general and special demurrers to the plaintiff's original petition, the demurrers were overruled, and exceptions pendente lite were taken, upon which the defendant's cross-bill of exceptions assigns error. The defendant filed an answer denying all the material averments of the original petition, and on the date of the trial amended its answer by adding six pleas. The plaintiff demurred to these pleas, and the court sustained the demurrer to the plea numbered 6, and overruled the demurrer as to the others. The plaintiff excepted pendente lite to the latter ruling and assigns error thereon; and the defendant excepted pendente lite to the ruling sustaining the demurrer to the plea numbered 6, and in its cross-bill of exceptions assigns error thereon. The defendant, on June 15, 1915, amended its amended answer, by filing four additional pleas. Pleas number 1 and 2 of this amendment were stricken by the court, and to this ruling the defendant excepted pendente lite, and in its cross-bill of exceptions assigns error thereon.

The first amendment to the original answer alleges in substance that at the time of the execution of the original bond and at the time of each renewal and increase in amount thereof the plaintiff made and delivered to the defendant a declaration relating to George H. Waddell, the employee whose fidelity was to be insured,— the statements hereinbefore quoted; that such statements were material to the risk, induced the defendant to accept the risk, and were made for the purpose of inducing the defendant to execute the bond and the several renewals and increases thereof; that said statements were untrue, and that if the defendant had known they were untrue it would not have accepted the risk and issued the bond and executed the several renewals and increases thereof; that the accounts of the plaintiff had not been audited on the respective dates named in the declaration and statements made by it, and were not correct in every particular, but, on the contrary, the employee Waddell was then in default in said bank in a large sum, which fact appeared from the books of account of the bank; and that the books on their face showed that they were not correct and that the accounts kept by said Waddell were not correctly

kept; that the bond and each renewal and increase thereof was therefore void; and the defendant tendered to the plaintiff the full premiums on said bond and on the renewals thereof, paid to it by the plaintiff. So much of the second amendment to the defendant's pleas as was allowed by the court averred that if any investigations were made of the accounts of the plaintiff's bank or of the books or accounts of the employee Waddell, they were not made with ordinary care and diligence, and did not include an examination of the accounts of Waddell with said bank; and that on certain dates stated the plaintiff, through its examining committee, did examine the books kept by Waddell, and did investigate far enough to discover that on each of the dates his accounts were not correctly kept and his books were not in balance; and that the plaintiff, at the time of making the warranties and representations hereinbefore quoted, had knowledge and notice that said warranties and representations were false.

On these pleadings the case went to trial, and a verdict for the plaintiff for $87.50 on the plea of tender was returned. The evidence is voluminous. On the question as to the bank's knowledge of Waddell's defalcations it is conflicting. While there is no direct evidence to the effect that Waddell's dishonesty was known to the bank before or at the time of the execution of the bond or of any renewal or increase in amount thereof, yet the books of the bank were offered in evidence and were inspected by the jury. It is fairly deducible from the evidence that the bank, if it made examination of the books and accounts as claimed by it, knew their condition and had knowledge of facts sufficient to charge it with notice of Waddell's dishonesty. His dishonesty is established beyond question, and the evidence, summed up, shows that through his dishonesty the bank lost, between April 10, 1911, and April 9, 1912, the period of the original bond, $3,057.39; during the second period $5,998.20, and during the third period $4,102.72. It is also clear that for several years before the date of the original bond Waddell had systematically extracted and stolen the funds of the bank, and that the total amount of the shortage occurring by reason of his dishonesty greatly exceeded the amount of the loss shown to have occurred during the period covered by the bond.

*Slade & Swift, A. W. Cozart,* for plaintiff.

*Dodd & Dodd, Little, Powell, Smith & Goldstein,* for defendant.

GEORGE, J. (After stating the foregoing facts.)    1. The foregoing statement is by no means exhaustive of the facts in this case, as they appear from the record of more than 400 pages, but they are sufficient to indicate that the court rightly overruled the demurrers to the defendant's pleas; and no reversible error appears in the court's charge. It is undoubtedly true that while the bond in this case may resemble a contract of suretyship, it is in effect a contract of insurance, to which the rules of construction peculiar to contracts of suretyship would not apply, but to which the rules governing ordinary contracts of insurance are applicable. Hormel *v.* American Bonding Co., 112 Minn. 288 (128 N. W. 12, 33 L. R. A. (N. S.) 513). In *John Church Co.* v. *Ætna Indemnity Co.,* 13 *Ga. App.* 826 (80 S. E. 1093), this court said: "Viewed as insurance contracts, the contracts of an organization writing fidelity insurance are to be governed by rules applicable to insurance companies, and when the contract is fairly susceptible of two constructions, one favorable and the other unfavorable to the indemnity company, the latter is to be adopted. It is but the familiar rule that ambiguities are to be construed most strongly against the insurer." To the same general effect is the almost unbroken current of authority, and citation of the many cases supporting this view would be entirely useless.

In our opinion, the bond in this case and each renewal certificate constituted the entire contract between the plaintiff and the defendant, and contained the warranties and covenants required of the plaintiff, in connection with the writing of the original bond; and the terms of the bond and the renewal certificates specifically modified, qualified, and controlled the statements made by the plaintiff in connection with the original bond and the renewals, so that the said statements, by the intention of the contract, were made only so far as the plaintiff had knowledge, and were not absolute, unconditional affirmations of the representations which they contained, but only representations of the knowledge of the plaintiff. Each statement furnished the defendant by the plaintiff, after the first, must be given the construction clearly indicated in the original bond; and, as there indicated, such statements were only as to the knowledge of the plaintiff, and were not absolute and unconditional affirmations of the matters referred to therein. This construction is consistent with the intention of the parties,

and is in harmony with the great weight of decided cases dealing with the question.

However, the demurrers to the pleas were properly overruled, because it is distinctly alleged in these pleas that no audit or examination of the books and accounts of the employee Waddell was made as and at the times stated in the declaration furnished the defendant by the plaintiff. It is also distinctly alleged in these several pleas that if such examinations were in fact made, the plaintiff knew of the dishonesty of Waddell, because his books on their face showed such dishonesty. It was certainly proper for the defendant to show, if it could, that no examinations were made by the bank, as stated by it to the defendant, but, if made, the bank had knowledge of Waddell's dishonesty. We therefore conclude that there was no error in overruling the demurrer to the pleas set out in the amendment to its original answer.

2. The plaintiff insists that a new trial should have been granted it upon the general statutory grounds, and upon 19 additional grounds, complaining of certain charges given by the judge to the jury. As already indicated, we think the verdict is supported by the evidence. The evidence was in conflict upon the material issues in the case, and, while it would have sustained a finding for the plaintiff in a substantial sum, it can not be said that the verdict is without evidence to support it. The case was well prepared, and was submitted to the jury with great skill and ability. Doubtless every material fact and circumstance was before the jury. Not only was the evidence developed in minute detail by the witnesses, both expert and non-expert in such matters, but the books of the bank were admitted in evidence, and the jury was authorized to find that the plaintiff either did not make examinations of Waddell's accounts as claimed by it, or, if such examinations were in fact made, that knowledge was thereby obtained on the part of the bank of the actual condition of the books. There is no reason to suppose that the jury was friendly to the defendant and unfriendly to the plaintiff. The contrary presumption, if there be ground for speculation, might be indulged.

3. Certain charges of the court are excepted to in grounds 4, 5, 6, and 7 of the motion for a new trial, as intimating and expressing an opinion upon the facts of the case. On careful examination of the record it appears that the trial judge read to the

jury, in detail, the pleadings of the parties, and also read to the jury certain stipulations between counsel. Further in the charge he undertook to apply the law of the case to the contentions of the defendant, and in making this application the charges attacked as intimating an opinion were given. We do not think that these charges are subject to the criticism made. The jury undoubtedly understood the purpose of these charges.

4. The court gave in charge to the jury sections 2479 and 2480 of the Civil Code of 1910. It is contended, in the 8th and 9th grounds of the motion for a new trial, that in so doing the court committed harmful error against the plaintiff. Whether these sections were applicable to the facts of this case need not be considered. The court instructed the jury that these sections of the code should be applied only to that part of the application which was signed by the bank itself. The application undoubtedly included the statement made by the bank, the obligee named in the bond. No release of liability on account of anything stated in Waddell's application, or any such part of the application as was made by Waddell, was pleaded, but the defendant insisted that the statements made by the bank, concerning the condition of Waddell's books and accounts, and relating to the manner in which he performed his services as treasurer of the bank, were false and fraudulent. In addition the court instructed the jury that, if the bank acted in good faith in making the statements to the bonding company and disclosed to the company all the material facts within its knowledge, then such statements, without exception, hereinafter noted, if false, would not void the bond.

5. The instructions complained of in the 10th, 12th, 13th, 16th, and 17th grounds were not, for any of the reasons assigned, erroneous. In the 11th ground exception is taken to an instruction to the effect that if the jury should find that the statement that the books of the bank were audited on the 18th day of December and were correct in every particular was a material representation, and that this statement was not in fact true, either because the books were not audited or because, being audited, they did not show that the accounts of Waddell were true in every particular, and if they should further find that the variation was a variation by which the nature or extent or character of the risk was changed, then the policy would be void. One ground of ex-

ception to this charge is that the court confined the plaintiff to the exact date, December 18, 1910. This exception is not well taken, because the court expressly stated to the jury that the variation from this statement, in order to affect this bond, would have to be material, and of such character as would change the nature, extent, or character of the risk. This charge was correct. It would not have been proper for the judge to state to the jury that it was immaterial, under the facts of the case, whether the audit was made on the 18th or the 14th of December. He properly left it to the jury to say whether or not an examination of the accounts of Waddell was made on December 18, 1910, as represented in the statement made by the bank to the defendant, and, if not, whether, by the variation, the nature or extent or character of the risk assumed by the defendant would be changed. It was for the jury, and not for the court, to say whether any representations inducing the defendant to execute its bond insuring the fidelity of Waddell were true or untrue, or whether the statements were material or immaterial, or whether such statements were so material as to vary the nature, extent, or character of the risk assumed by the defendant company. It is to be noted that a statement made to the defendant that the books of Waddell were on a certain date examined is a statement within the knowledge of the bank. That portion of the statement which relates to the information derived from such examination is not necessarily within the knowledge of the bank, and, if made in good faith by the bank, would not defeat the plaintiff's action.

6. The charges referred to in the 14th, 15th, and 18th grounds of the motion for a new trial do not require discussion. These charges are not subject to the exceptions taken. The charges may contain certain inaccuracies of expression, but they do not contain an incorrect statement of any controlling principle of law applicable to the facts of the case. In the 22d ground it is complained that the judge confused preponderance of evidence with proof to a reasonable and moral certainty. This criticism seems to be well founded. However, this charge did not immediately follow the contentions of the plaintiff; and since the burden in this case was upon the defendant to establish its affirmative pleas, the charge was more harmful to the defendant than to the plaintiff. In addition, the charge of the court fully explained to the jury that in the instant case the preponderance of the evidence should control.

7.  The assignments of error in the 19th, 20th, and 21st grounds of the motion remain for consideration.  The judge here read to the jury a portion of the statement furnished by the plaintiff to the defendant under date of October 19, 1912, asking for an increase in the amount of the bond of Waddell from ten to fifteen thousand dollars.  The court thus charged in effect that if this statement was material to the risk and the bonding company believed it was true, and acted upon it and granted an increase in the amount of the bond from ten to fifteen thousand dollars, but if in point of fact the books and accounts of Waddell were not at that time correct in every respect, and there was a variation by which the nature or extent or character of the risk was changed, the bond would be void, "in so far as the increase of the bond was concerned," and that this would be true although the president of the bank, in making this statement, may have acted in good faith and may have believed that the statement was true; that where the insurer is induced to enter into the contract by a representation as to a material fact, the policy will be void where the representation was made wilfully, with intent to deceive, or through an innocent mistake.  Further, and in the same connection, the court charged the jury that the same rule that he had given in connection with the application to increase the liability under the bond from ten to fifteen thousand dollars would apply "as to these other matters to which I have directed your attention."  He then proceeded to remind the jury that it was alleged by the defendant that at the time of the execution of the bond and on the several occasions when it was renewed the plaintiff stated that examinations of the books of Waddell were made at certain times, and that these audits showed the books to be correct, and that the same rule applied to those "instances of defense to which I have already directed your attention, in so far as the examinations were concerned; but in those cases, as already charged you, if the examinations were in point of fact made, and the result of the audit or examination showed that the books and accounts of Waddell as treasurer were correct, then the representations would not void the policy, if the Home Savings Bank, in good faith, believed that they were correct and made the representations believing that they were correct."  The court did, however, in the same connection, leave it to the jury to say whether in point of fact the bank had examined

or audited the books of Waddell. He concludes the instruction on the effect of the statement dated October 19, 1912, and made by the plaintiff with the positive statement that "the matter I referred to is the increase of the policy from ten to fifteen thousand dollars." The concluding statement of the charge is this: "If that increase is void—if you find that to be void from ten to fifteen thousand dollars—why, then the plaintiff in no event could recover over $10,000, because that would leave the bond only $10,000." In our view these charges incorrectly stated the law of this case. The statement of October, 1912, was made for the purpose of increasing the liability fixed by the terms, provisions, and conditions of the original bond, and this statement must be considered as modified by the provisions of that bond. The original bond in this case did not contemplate that statements made by the employer were to be considered as positive and unconditional affirmations of the truth of the matter therein contained, but meant that such statements were true only to the knowledge of the employer. As a general rule, it can not be said that an erroneous instruction, as this was, resulted in no harm to the losing party. In this case, however, it is clear to the point of demonstration that the charge did not harm the plaintiff. The jury could only have understood from this charge that it related to the increase in the liability of the bond from ten to fifteen thousand dollars. Indeed, the judge clearly and repeatedly stated to the jury that this rule which he was then giving them applied only to the increase in liability of the bond, and did not affect the original bond or any renewal thereof.

The jury found for the defendant upon its affirmative pleas, and returned to the plaintiff the amount of premiums paid by it for the bond and its renewals. This was a clear finding that the bond was void; and, inasmuch as the jury found, under substantially correct instructions by the court, that the plaintiff was not entitled to recover any amount, and that the bond was void by reason of the things affirmatively pleaded by the defendant, a reversal is not required on account of this error in the charge of the court. The court therefore did not err in overruling the motion for a new trial.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Wade, C. J., and Luke, J., concur.*