THE GENERAL SUPPLY AND CONSTRUCTION COMPANY, Respondent, Appellant, *v.* ROBERT GOELET, Appellant, Respondent, Impleaded with THE UNIT CONCRETE STEEL FRAME COMPANY, Respondent, Appellant, GEORGE H. STORM, Trading under the Firm Name of GEORGE H. STORM & COMPANY, and Another, Respondents, and LENA PLUCKHAM and Others, Defendants.

First Department, January 11, 1924.

Contracts — building contracts — action to foreclose mechanic's lien — owner, after delay by contractor, completed building — owner counterclaims for damages — owner did not lose right to damages by permitting contractor to proceed after expiration of time — owner's right to damages not defeated under contract even if delay were partially his fault — delay was not fault of owner — measure of damages is rental value during delay — amount of security forfeited by lessee not deductible — plaintiff not entitled to interest.

In an action by a building contractor to foreclose a mechanic's lien in which the owner interposed a counterclaim for damages based on delay of the contractor in completing the building, which necessitated the owner's taking over the work and completing the building himself, the owner did not lose his right to recover damages for the delay by permitting the contractor to proceed with the construction of the building after the period stated in the contract for its completion.

The owner's counterclaim for delay cannot be defeated even if the plaintiff could have shown that the delay in part was caused by the fault of the owner, since the contract specifically provided that the contractor should be entitled to an extension of time for completing the building equivalent to any delay caused by the act of the owner, but that no such allowance would be made unless a claim therefor was presented in writing to the architect and consulting architects within twenty-four hours of the occurrence of the delay, and no such claim was presented by the plaintiff.

While a decision as to the weight of the evidence on the finding of undue delay on the part of the owner is not necessary, still such a finding is clearly against the weight of the evidence.

The measure of the owner's damages under his counterclaim is the rental value of the building between the time when the building should have been completed

and the time when the owner prevented further performance by the contractor; and in this case though experts testified that the rental value was $100,000 a year, still, as the owner had agreed to lease the building for $86,000 a year, that agreement gives a practically correct measure of rental value.

The contractor is not entitled to offset against the owner's counterclaim for damages the amount of money which the owner received as security from a lessee who subsequently defaulted and thereby forfeited his security.

The contractor is not entitled to interest upon the amount of the recovery, since such amount was clearly unliquidated and not susceptible of computation either alone or in connection with established market values.

CROSS-APPEALS by the defendant, Robert Goelet, and by the plaintiff, The General Supply and Construction Company, and the defendant, The Unit Concrete Steel Frame Company, from a judgment of the Supreme Court in favor of the plaintiff and certain of the defendants, entered in the office of the clerk of the county of New York on the 18th day of January, 1922, upon the report of a referee, in an action to foreclose a mechanic's lien, filed by the plaintiff.

The defendant, Robert Goelet, appeals from the whole judgment and from an order granting the plaintiff and the defendant, The Unit Concrete Steel Frame Company, an extra allowance, and the plaintiff and the defendant, The Unit Concrete Steel Frame Company, appeal from the judgment in so far as it denies to them the recovery of interest.

*Frederick Hulse* of counsel [*DeWitt, Lockman & DeWitt*, attorneys], for the defendant Goelet.

*Franklin Nevius* of counsel [*Alfred C. Petté* and *Benjamin G. Paskus* with him on the brief], *Rose & Paskus*, attorneys, for the plaintiff.

*Kellogg & Rose*, attorneys, for the defendant Unit Concrete Steel Frame Company.

*Alfred R. Bonnell*, attorney, for the respondent Storm.

*Carter & Haskell*, attorneys, for the respondent Bouker Contracting Company.

FINCH, J.:

A mechanic's lien was filed by the plaintiff as contractor for $114,269 against premises owned by the defendant Goelet (hereinafter referred to as the " owner "). Mechanics' liens also were filed by the other defendants as subcontractors. By stipulation it was agreed that the subcontractors were entitled to judgments for certain stipulated amounts out of any recovery by the plaintiff.

It appears that the plaintiff and the owner entered into a contract whereby the plaintiff undertook to erect a building for the owner,

to be completed by July 1, 1907. Said building was not completed as provided by the contract, and the progress of the work was so unsatisfactory to the owner that on March 21, 1908, he took over the work and carried it to completion. The plaintiff sued to recover the value of the work and material furnished up to the time the owner took over the work. The owner counterclaimed the damages sustained by him by reason of the plaintiff's delay in proceeding with the work.

Upon a former appeal this court reversed a judgment for the plaintiff and certain of the defendants (149 App. Div. 80) and ordered a new trial, holding that, while the termination of the contract, whether rightful or wrongful, by the owner created a liability to the plaintiff, because not in accordance with the terms of said contract, nevertheless, the plaintiff, by bringing his action on the theory of *quantum meruit*, thereby elected to treat the contract as canceled and to bring his action on that theory rather than for damages for a breach of the contract. (*Jones* v. *Judd*, 4 N. Y. 411, 414; *Wright* v. *Reusens*, 133 id. 298, 306; *Borup* v. *Von Kokeritz*, 162 App. Div. 394.) The referee in the present trial also has found that the action is in *quantum meruit*. The contract, therefore, no longer governed except as a means for determining how long the plaintiff was in default in completing the work. This court also held that there was no evidence to sustain a finding that the owner was responsible for any of the delay in the prosecution of the work by the plaintiff, and that the owner was entitled to offset against the claim of the plaintiff the actual or general damages which he sustained between the time when the building should have been completed and when he took over the work. Also that the plaintiff's claim being unliquidated and not susceptible of ascertainment by computation, the plaintiff was not entitled to interest upon the amount recovered.

The record now presented is substantially the same as upon the former appeal, with some additional testimony adduced by the plaintiff for the purpose of showing delay on the part of the owner. The learned referee has found that the owner and contractor were mutually responsible for the delay, and dismissed the counterclaim of the owner, upon the ground that when the owner allowed the plaintiff to continue with the work after the time for completion had passed, the owner thereby waived the right to make any claim for damages for delay. By permitting the work to proceed as aforesaid, the most that the owner might lose would be the right to cancel the contract because of delay without notice to the plaintiff and an opportunity to complete within a reasonable time thereafter. The owner, however, did not lose the right to recover

damages by reason of the delay which had already accrued. The rule applicable is stated clearly in the case of *Shute* v. *Hamilton* (3 Daly, 462, 470) where the court said: " The referee has found, that by these payments the defendant merely treated the contract as still in force, and that they constituted no waiver of the defendant's claim for damages, by reason of the delay. The finding was correct. The acts here relied upon as amounting to a waiver took place after the plaintiff's failure to complete the building within the stipulated time, and in respect to the waiver of such a condition or of all claim for damages under it, there is a very material distinction between a party's acts before and after the breach of a condition; for after a breach, as a general rule, there is no waiver of the claim for damages, unless by the making of a new agreement."

Nor can the owner's counterclaim for delay be defeated even if the plaintiff should have shown (which, as noted, it failed to do) that the delay in part was caused by the fault of the owner, since the contract specifically provided that the contractor should be entitled to an extension of time for completing the building equivalent to any delay caused by the act of the owner, but that " no such allowance shall be made unless a claim therefor is presented in writing to the architect and consulting architects within twenty-four hours of the occurrence of such delay." No such claim was presented in the case at bar. There is no substantial distinction between a claim for extension of time in which to perform the work because of delays by the owner, and an excuse for failure to perform the work within the required time because of delays alleged to have been caused by the owner. In either case it is an allowance sought by the contractor. It is not a case where the contractor is seeking to recover damages upon the theory of a breach of the contract by the owner because of unreasonable or willful delay, but clearly is a contingency which the parties undertook to provide against in their contract so as to avoid the uncertainty of disputes upon this question long after the occurrence of the alleged delays. (*Phelan* v. *Mayor, etc.,* 119 N. Y. 86, 90; *Gearty* v. *Mayor,* 62 App. Div. 72; *Van Buskirk* v. *Board of Education,* 78 N. J. L. 650.) In the case last cited the reason for the rule is clearly shown, the court stating: " Testimony was also tendered to show a delay in the work because of inability to get cheese cloth to close the windows while the plastering was being done; and delay in tearing out a stairway because of variations from the plans; and delay of the architect in furnishing details; and delay because of the architect's unreasonable insistence that the plaster was too green to proceed with the work. In none of these instances, however, was there

any claim for an extension presented to the architect in writing, and of course there was no period of extended time fixed by the architect. * * * The provisions in question were introduced into the contract for the security of the Board of Education for the purpose of limiting its liability against uncertain claims resting upon parol testimony. No one could waive those provisions save the Board of Education, or someone authorized by that Board to do so."

Because of the foregoing reason a decision as to the weight of the evidence on the finding of undue delay on the part of the owner is not necessary to the determination of this appeal. This record discloses, however, that such a finding is clearly against the weight of the evidence if indeed it may not be said to lack any evidence to support it. All the delay which the plaintiff complains of occurred in connection with the approval of plans which the plaintiff was obligated to furnish and have approved by the owner's architects. The plans first furnished were approved, but within six weeks it was discovered that said plans did not comply with the requirements of the contract and new plans were requested. It was conceded that the plans were defective, and no objection was made to furnishing new plans. It does not appear that there was any undue delay on the part of the owner's architects in passing on plans submitted or that there was any lack of good faith in their refusal to approve the same, either of which can be said to have contributed to the delay of the plaintiff. Reliance is placed by the plaintiff upon the fact that the owner elected to change certain supporting columns from steel to cast iron, plaintiff claiming that there was a delay of several months by the owner in making up his mind as to this. This claim is completely rebutted by a letter dated October 19, 1906, written by the plaintiff to the owner, which shows that the matter which plaintiff claimed was then in a tentative state and the subject of negotiations, had in fact been definitely settled, by the plaintiff allowing the owner $5,000 for the privilege of not using cast iron columns, but using steel columns instead. It further appears that eight months afterwards the plaintiff had not completed the excavation necessary to allow these columns to be set, so that in any event the plaintiff has no ground for claiming delay in this connection.

It follows that the owner is entitled to recover the damages which he has sustained by reason of the plaintiff's delay. Under the former decision of this court, these damages are such as occurred between the time when the building should have been completed and the time when the owner prevented further performance by the plaintiff. The proper measure of such damage is the rental value of the

building during such period. This rental value the experts have testified was $100,000 a year. It appears, however, that the owner had agreed to lease the building for approximately $86,000 a year, which agreement gives a practically correct measure of rental value.

Another question arises as to whether the plaintiff is entitled to offset against this damage for delay the sum of some $52,500 which the owner received in the following manner: Apparently the owner erected the building at the request of Taylor & Andrews upon their agreement to pay him $2,500 a month from May 10, 1906, until the completion of the building, to be applied against a bond which they were to give to secure performance on their part of the leasing agreement, the lessees upon taking possession to pay a year's rental in advance as security in lieu of said bond, upon receipt of which the aggregate monthly payments were to be returned. The lessees defaulted, and the owner has retained the aforesaid payments. It is clear that this amount should not be credited on account of the owner's damages, for the following reasons: If the building had been completed as it should have been completed and the lessees performed their agreements, the owner would have had in his hands approximately $86,000 as security, and he also would be receiving his rent. The payments received as security were in contemplation of damages which might accrue from failure of the lessees to perform under a contract extending over a period of twenty years from the date of the completion of the building, whereas the plaintiff's claim covers a period before the completion of the building, and before the rent began to run.

It follows that the judgment should be modified by deducting therefrom the defendant owner's damage calculated as aforesaid, and by reducing proportionately the extra allowance to the plaintiff at Special Term, and as so modified affirmed, with costs of this appeal to the defendant owner. The plaintiff is not entitled to interest upon the amount of the recovery, since such amount clearly was unliquidated and not susceptible of computation either alone or in connection with established market values.

CLARKE, P. J., SMITH, MERRELL and MARTIN, JJ., concur.

Judgment modified as indicated in opinion, and as so modified affirmed, with costs to the defendant owner. Settle order on notice.